**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3128-22

ROOSEVELT MANOR
APARTMENTS,

    Plaintiff-Respondent,

v.

JALIS ESPINOZA,

    Defendant-Appellant.

_____

Submitted June 4, 2024 – Decided August 14, 2024

Before Judges Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. LT-007378-22.

Rutgers Camden Housing Advocacy Clinic, attorneys for appellant (Ashley D. Maddison, on the briefs).

Greenblatt, Lieberman, Richards & Weishoff, LLC, attorneys for respondent (Nicolas G. Rotsides, on the brief).

PER CURIAM

Defendant Jalis Espinoza appeals from the Law Division's April 20, 2023 judgment of possession (JOP) entered in favor of plaintiff Roosevelt Manor Apartments; the May 22, 2023 order denying her application for an order to show cause with temporary restraints; and the June 7, 2023 order denying her application for an order to show cause to vacate the JOP and stay the execution of the warrant of removal pending reconsideration.[1]  We affirm.

I.

Plaintiff owns and operates a government-subsidized residential apartment complex in the City of Camden, where defendant and her children began residing in January 2011.  Pursuant to the terms of defendant's lease agreement, she was required to recertify her income, assets and household composition on an annual basis to confirm her eligibility for Camden's Low Income Housing Tax Credit Program (LIHTC).  If she failed to do so in breach

---

[1]  Defendant's notice of appeal also listed the June 14, 2023 order denying her application for a stay of judgment and vacating the warrant of removal pending resolution of this appeal.  Because she did not brief the issue, it is deemed waived.  See 539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024) (noting "an issue not briefed is deemed waived").  That order is also rendered moot as a result of our resolution of the appeal.

of the lease agreement, the lease would be converted to a month-to-month basis and her rent would increase to the unsubsidized or flat rate.

On December 6, 2022, plaintiff filed a complaint seeking to remove defendant from her apartment on two grounds:  count one alleged defendant violated the terms and conditions of the lease agreement by failing to complete the annual certification, and count two alleged nonpayment of rent and sought the outstanding amount, attorneys' fees and costs totaling $18,246.47.  The form summons, however, indicated the sole cause of action was based on nonpayment of rent.  The following facts were adduced at trial through the testimony of Annette Hilton, plaintiff's community manager, and defendant, who appeared self-represented.[2]

On December 2, 2020, plaintiff served defendant with a notice to recertify.  The notice required defendant to sign the recertification documents and deliver them to Hilton's office the next day, along with verification of the balance on her unemployment and child support debit cards, most recent unemployment

---

[2]  The record before us does not contain most of the documents entered into evidence at trial.  We are unpersuaded by defendant's argument plaintiff bore the burden to file these documents for our review.  Defendant was provided these documents during trial and as the appellant in this matter, it was incumbent on her to file the documents in the record before the trial court.  See R. 2:6-1(a)(1)(I).

payment information, most recent six pay stubs, and a printout of her child support disbursement. When defendant failed to comply, plaintiff served her with a second request extending the deadline to December 30, 2020. Plaintiff served defendant with another follow-up request for outstanding documentation, specifically ATM balance receipts for her unemployment and child support cards, with a deadline of February 12, 2021. These notices were served on defendant via hand delivery directly to her apartment by maintenance staff.

On March 9, 2021, Hilton responded to an email from defendant about an unrelated matter, advising defendant she still needed to submit the ATM receipts. The next day, Hilton sent defendant a second email requesting the ATM receipts. The email also advised defendant that, because she had not timely recertified, her lease had been converted to a month-to-month basis as of January 1, 2021.

On May 26, 2021, plaintiff served defendant with a fourth request to recertify, asking for the still outstanding ATM receipts; a notice of rent adjustment advising that, because she failed to recertify, her rent had increased from $241 to the unsubsidized rate of $908 per month; and a notice to cease for failure to recertify. These notices were served directly to defendant's apartment by maintenance staff. The notice to cease was also sent to defendant by regular

4

and certified mail; the certified mail was returned to plaintiff as unclaimed but the regular mail was not returned. On June 8, 2021, plaintiff served defendant with a final request to recertify, via direct delivery to her apartment by maintenance staff.

Defendant eventually completed her recertification for 2021 in March 2023, prior to the hearing. As a result, on March 22, 2023, her rent was reduced to $522 retroactive to January 1, 2021, leaving her a balance of $2,718.47 for that year.

Hilton also testified that, despite having been served with notices and meeting with Hilton to complete the recertification packet, defendant remained non-compliant with recertification for 2022 and 2023 by failing to sign documents and releases to verify her income and assets and failing to provide all the necessary documentation and receipts. She also had not paid any rent since December 2021.

Defendant testified she complied with the recertification process for 2021 in December 2020 and provided Hilton with the receipts on more than one occasion, but Hilton continued to ask her for them. Defendant said she had proof of her submitting the ATM receipts because she took screenshots of them, but she did not produce any evidence of that at trial. She also claimed she had proof

of her emailing requested documentation to Hilton, but could not retrieve her email because she no longer had access to the phone number associated with it. She stated Hilton told her the application had been submitted for approval but was delayed because of staffing issues due to COVID-19.

Defendant further stated she lost her mailbox key in April 2021 and the post office would not give her a new key unless she produced a current lease, which she did not have. Because she had no access to her mailbox, she did not receive any of the notices that were mailed to her. She did not dispute having received the hand-delivered notices.

Defendant stated at some point Hilton became "malicious" and "threatened to evict" her. She claimed she did not complete recertification for 2022 because she was unclear how to report her fluctuating income, Hilton refused to answer her questions, and Hilton's supervisor was unhelpful.

After considering testimony and documents in evidence, the court found defendant "just elected, over a period of time, just simply not to cooperate" with the recertification process. The court "could tell just with some of the questions. Well [defendant] had this question or this question or this question and [she] wanted this and [she] wanted that." The court was "satisfied [defendant] did not cooperate with [her] landlord and . . . there [wa]s notice after notice after notice

6

here trying to get this information and [defendant] just didn't comply." The court further found defendant's testimony not credible, and her argument she did not receive mailed notices because she lost her mailbox key "not persuasive in the least." Accordingly, the court found it was left with "no other alternative than to grant the relief requested."

The resulting JOP reflects the following:

> This matter having been brought before the court by a complaint by the [p]laintiff . . . , in an action for possession of the premises for: [n]on[]payment of [r]ent, N.J.S.A. 2A:18-53 ([s]tatutory [b]asis) against [d]efendant . . . , and
>
> The [c]ourt having conducted a trial on the issues raised in the complaint; and
>
> [Plaintiff] having produced and the [c]ourt having reviewed a copy of the lease and any required registration statement and found that [plaintiff] has proven a cause of action for possession on the basis of [defendant] has refused to cooperate with completing certifications so that rent could be paid by an outside agency[,] and there is not rent due and a [JOP] should enter in this case;
>
> IT IS on this 20th day of April 2023, ORDERED that a [JOP] is hereby entered for the property at issue in the [c]omplaint.
>
> The judge is not determining an amount of rent owed at this time.

7

On May 4, 2023, defendant filed a pre-printed form application for an order to show cause in which she circled the option indicating she was seeking only the following relief: "I need more time before I can move because I have been unable to obtain a new residence." She did not circle the option indicating "I am applying to have the judgment for possession vacated." In support of her application, defendant listed the following reasons, which we have condensed for purposes of this decision: 1) she was not served "a letter" from Hilton or counsel; 2) she was not provided a 2021 lease agreement during 2021 or 2022, even though she completed the recertification packet before December 26, 2020; 3) she called, emailed and visited Hilton "the entire year of 2021" asking for a new lease agreement; 4) Hilton did not provide defendant with an opportunity to make another appointment to help her answer or complete the remainder of the 2022 recertification packet; and 5) her children faced a safety risk if she were to be removed from the apartment.

That same day, the court entered an order granting defendant's request to stay the warrant of removal to May 15, 2023.

On May 11, 2023, defendant filed a second application for an order to show cause seeking the same limited relief. Defendant listed the following reasons in support of her application: 1) she was not served with notice of the

court date by email or phone; 2) she was not given a lease agreement for 2021 or 2022 in those years; 3) her rent increased far above her income; 4) Hilton refused to submit defendant's 2021 recertification or receipts, despite defendant's having provided her verification in December 2020; 5) she did not have anywhere else to live; and 6) through 8) she and her children were at risk of harm if they were to be removed from the apartment.

The next day, the court entered an order granting defendant's request to stay the warrant of removal until May 23, 2023. The order further stated, "A review of [defendant]'s [order to show cause] suggests [she] is seeking to vacate the JOP. Such relief may be raised by motion wherein [defendant] can show cause why any defenses now raised could not have been raised during the trial scheduled for [April 21, 2023]."

Defendant then obtained her current counsel, who filed a third application for an order to show cause with temporary restraints on May 22, 2023 seeking to vacate the JOP and dismiss the complaint against her. Defendant's certification in support of the application reflected her testimony at trial: she had provided Hilton with the recertification packet and ATM receipts on December 21, 2020; Hilton repeatedly asked her for additional receipts and told her the recertification was pending but delayed because of COVID-19; she lost

her mailbox key and did not have access to her mailbox; and she signed new recertification documentation on March 22, 2023, which was approved.

Defendant further certified she was unable to make her initial appointment for the 2022 recertification because her child was sick, she emailed Hilton documentation of her income, and she did not sign all the required documents during a subsequent meeting in April 2023 because she had questions about how to report her income. She reiterated her children would be at risk if she had to move out of the apartment.

On May 22, 2023, the court entered an order denying the application because "a trial was conducted on [April 20, 2023] and the ruling of [JOP] stands. The [w]arrant of [r]emoval may move forward." Three days later, the court also placed reasons for the denial on the record, in which it noted defendant's application failed to meet the standard to warrant vacating the JOP:

> It was a full trial. Exhibits were introduced and I don't believe this [application] is appropriate.
>
> So I'm denying it. I'm not going to now have an order to show cause and basically relitigate the case unless I'm shown . . . where there's been some sort of palpable mistake of the law or newly discovered evidence or the other factors set forth in the rules with regard to that.

A-3128-22

On June 7, 2023, defendant filed another application for an order to show cause to vacate the JOP and stay the execution of the warrant of removal pending reconsideration. That same day, the court entered an order denying the application. After reiterating the procedural history of the case and its prior decisions, the court noted it had already "concluded that no palpable mistake of law was shown nor was newly discovered evidence claimed" and there was a "lack of basis to seek an amended judgment." The court then addressed the pending application:

> [Defendant]'s latest [order to show cause and] motion for reconsideration essentially raise[] nothing new. [Defendant]'s assertions of various notice failures[] ignores both the happening of the trial and admissions by [her] that she lost her mailbox key. The instant application by [defendant] further ignores her trial admission that she refused to sign her certification papers. To the extent there exists a valid emergent situation, it is an emergency brought on by [defendant]'s own making.

This appeal follows, wherein defendant raises the following issues for our consideration: the trial court erred as a matter of law by entering a JOP without a legally permissible cause of action; the court committed plain error by failing to make findings of fact and conclusions of law and failing to enter evidence into the record in deciding defendant's May 4, 2023 application for an order to show cause; and the court abused its discretion in denying post-judgment relief

11

for these same reasons. In addition to its arguments in opposition to defendant, plaintiff contends the appeal is moot because defendant vacated the apartment, which has been leased to other individuals.

## II.

We first address the issue of mootness. "Courts normally will not decide issues when a controversy no longer exists, and the disputed issues have become moot." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). "A case is technically moot when the original issue presented has been resolved, at least concerning the parties who initiated the litigation." Ibid. (quoting DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring)). Stated differently, "[a]n issue is moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006) (internal quotation marks omitted) (quoting N.Y. Susquehanna & W. Ry. Corp. v. State, Dep't of Treasury, 6 N.J. Tax 575, 582 (Tax 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985)).

"Ordinarily, where a tenant no longer resides in the property, an appeal challenging the propriety of an eviction is moot." Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div. 2005) (citing Ctr. Ave. Realty, Inc. v. Smith, 264

12

N.J. Super. 344, 347 (App. Div. 1993)). However, we may nevertheless consider the appeal if the "eviction carries residual legal consequences potentially adverse to defendant." Ibid. Here, we are persuaded defendant's ability to secure public housing in the future may be impacted by her past performance, including any evictions. See 24 C.F.R. § 982.552. In light of the risk to her future housing and the public importance of the issue generally, we decline to dismiss the appeal as moot.

Turning to defendant's arguments, we begin with our standard of review applicable to the JOP. Appellate courts afford a deferential standard of review to the factual findings of the trial court on appeal from a bench trial. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974). These findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, our review of a trial court's legal determinations is plenary. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

As to the post-judgment motions, "[t]he trial court's determination under [Rule 4:50-1] warrants substantial deference and should not be reversed unless it results in a clear abuse of discretion." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

We likewise review a trial judge's decision on whether to grant or deny a motion for reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ACB Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg, 171 N.J. at 571 (internal quotation marks and citation omitted)).

Defendant first argues the trial court erred as a matter of law by entering a JOP on the wrong statutory basis, where it found no rent was due and owing, and without plaintiff's compliance with statutory notice requirements applicable

14

to actions based on nonpayment of rent. We are unpersuaded by defendant's contentions because they rest on the incorrect premise that the trial court issued the judgment for possession based on defendant's nonpayment of rent.

Defendant points to the JOP's first paragraph, which stated the matter had been brought before the court by plaintiff "in an action for possession of the premises for: [n]on-payment of [r]ent, N.J.S.A. 2A:18-53 ([s]tatutory [b]asis)." While this preface reflects the information contained in the summons, it did not encompass both grounds substantively plead in the complaint and did not reflect the basis on which the court issued the JOP. The JOP plainly stated rent was not due and plaintiff's cause of action was proven "on the basis of [defendant] has refused to cooperate with completing certifications so that rent could be paid by an outside agency," which was a breach of the parties' lease agreement. We are satisfied the court's decision was based solely on defendant's noncompliance with recertification, as the court found at trial, and not on the nonpayment of rent. As such, defendant's arguments in this regard lack support in the record.

We next address defendant's contention plaintiff waived the right to seek eviction for cause by accepting rent and entering into a new lease agreement with defendant. The trial court was aware defendant complied with the recertification process for 2021 prior to trial and, as a result, her rent was

retroactively reduced. While defendant received a copy of the notice prior to trial, as evidenced by her signature on the document dated March 22, 2023,[3] she did not offer the document as evidence at trial nor did she argue that the retroactive extension of the lease constituted waiver of plaintiff's claims.

Ordinarily, we will decline consideration of an issue not properly raised before the trial court, unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Neither situation exists here and, therefore, we decline to consider defendant's contention on this point. See Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018) (noting that the function of an appellate court is to review the decisions of the trial court, rather than to decide applications tabula rasa). This is particularly so here, because the question of "waiver always rests on intent, and is ever a question of fact." Jasontown Apts. v. Lynch, 155 N.J. Super. 254, 262 (App. Div. 1978) (quoting United Illuminating Co. v. Syntex Rubber Corp., 4 Conn. Cir. 303, 231 (Cir. Ct. 1966)).

---

[3] The notice was annexed to defendant's June 9, 2023 application for an order to show cause.

We next turn to defendant's contention the court committed plain error by failing to make findings of fact and conclusions of law and failing to enter evidence into the record to allow for review. Although not entirely clear, it appears defendant makes this argument with regard to the court's consideration of all four orders to show cause. However, we note defendant did not list the court's May 4 and 12, 2023 orders in her notice of appeal and we therefore decline to address her challenge to those orders. An appeal is limited to those judgments or orders, or parts thereof, designated in the notice of appeal and pursuant to Rule 2:5-1(f)(2)(ii), defendant's challenge to those orders has been waived. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1(f) (2024) ("Courts have concluded that only the judgments, orders or parts thereof designated in the notice of appeal are subject to the appellate process and review.").

As to defendant's May 22, 2023 application for an order to show cause seeking to vacate the JOP, Rule 4:50-1 provides:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49.

Defendant's June 7, 2023 application for an order to show cause sought the same relief by way of reconsideration. Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration

> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

Having reviewed the trial transcript and motion certifications, we are satisfied the court did not abuse its discretion in declining to hold a plenary hearing and denying the motions. As the court found, defendant's certification failed to raise any issues that would warrant relief from judgment under either a motion to vacate or for reconsideration. Although defendant appeared for trial unrepresented by counsel, she had the opportunity to present her case and did so. Her certification merely reiterated the explanations and defenses she proffered at trial, which the court had already considered and rejected. Because

her applications failed to meet the requisite standard for the relief she sought, we discern no error in the court's denial on the papers.

To the extent we have not expressly addressed any issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3128-22